Mr. justice Colcock
delivered the opinion of the court.
In this case, the only question of any importance is, whether the defendants are exempted from their responsibility by the peculiar circumstance attending the case ? Whether it was the result of inevitable accident, or as the defendant’s counsel put the case, whether it is “ axdanger of the sea,” within the meaning of the exception contained in their receipt ? I consider the terms “ inevitable accident” and “ perils of the sea” as convertible terms, so far as they ¡relate -to the responsibility of the carrier to the owner, It?. *365 ¿large sense (says Marshal!,) all tiie accidents or misfortunes to which those eng.gad in maritime adventurer, ;uc exposed, may he sai-.l to arise from the perils of the sea ; and conformably to this idea, a loss by capture was for* in>*rly hold .-n in our courts to he a loss by the peril of the sea; but more modern times, it has been found conve ■ nient to distinguish the losses to which ships and goods a; sea are liable, by the more immediate causes to which, they may bo more particularly ascribed. In this view, losses by the perils of the sea are now restricted to such asen-dents 01 misfortunes only as proceed from mere sea-dam-’ age ; that is, such as arise car m divina, from stress of wea • .her, winds and waves, from lightning and tempest, rocks and sands, &c. A collision therefore which would excuse, must be such as coulc] not he avoided by human prudence and skill. In other words, it must be the effect of the vif divina; the operation of wind and waves combined to a degree not to be resisted by human skill or forethought; as if two vessels meet in a t.t'.nn at night, or even in the day, when there is clearly no blame attributed to either side. Formerly, by the m tritime law, as stated by Vafin., Pothier and Enierigm, urdt-r such circumstances each vessel bore apart of the Iocs. But by the law of England, if it appear to ha. been unavoidable, without fauh in any one, the owner of the ship or cargo damaged must bear the loss. (2 Marsh. 493.) But when- resulting from the want of diligence or skill in either, it makes the common carrier liable. If the captain oí the vessel which causes the injury he iu fault, he is answerable to the owners of the injured vessel, and they to the person for whom they carry. And upon examination, it will be found that the cases so strongly relied en, on the part of the defer, dants, support this doctrine.
The case c& Pickering and Barclay did not in fact turn on this point. It v, as decided early in the reign of Charle the First, when capture or destruction by the king’s enemies was comprehended in the words “ perils-of the sea,"' audit war determined ihn; the owners were not answer*- *366 ble, because “ the taking by pirates was a peril of the sea.” (Abbott, 267.)
The case of Bever and Tomlinson, was the case of a vessel designedly struck by' the vessel of an enemy; the . case never came to judgment, but Mr. Abbott, in speaking of it, says, the express exception afforded room to contend that the exception of the king’s enemies, which arises out of the general rule of law, was meant to be excluded in the particular instance; so that this was not treated as a case of collision. .
The case of Baker and Fisher was considered as a case of collision ; but it is expressly said that it was a matter of doubt whether the master of the defendant’s ship ought to have understood the course which the- others would pursue and borne to leeward to avoid them. That no blame was considered as imputable to him for'not having done so; nor was any fault attributable to the persons who had the conduct of either of the other ships. (Abbott, p. 209.)
Even a loss, happening from a natural cause-, will not always be considered as within the exception “perils of the seas.” If a vessel strike on a shallow or rock, the situations of which are generally known, it may be a question whether it was not the fault of the master that the vessel went on it. If she be forced on a rock by adverse winds, or if a shallow be suddenly created by tempest or other violent convulsion of the sea, the owners would be excused. But where it might have been avoided by skill and prudence, they would be' liable.' (Abbott, 210.)
But the question was left to the jury, according to the decision of the Constitutional Court in this very case, (which is supported by the doctrine, as laid down in Abbott, 204,) with an opinion, that the facts well warranted them in finding a verdict for the plaintiffs; and I think the case can admit of no doubt. (1 Nott McCord, 170.) Bjc a reference to the testimony, it will be sefn that every witness who gave an opinion on the pbint, s¡aic| it was the duty of the captain of the Planters’ 'Friend to have borne away; and. that he could easily have done so, she being *367 full in the wind. S.ome of the witnesses thought it a dan-* ger of the sea; but that opinion was not to influence the jury ; because of the limitation which was given to it by most of the witnesses, “ if it could not have been avoid- ' ed,” which was in fact the whole question. But captain Benjamin, the oldest .and most experienced seaman, who was examined, said he could not think it a danger of the sea; “if so, they had better lie at the wharves; for in that navigation they were always tacking.” Both captains were young and inexperienced, and no doubt stood on etiquette ; and it is impossible to read the protest of the seaman John Wales, who was on hoard the Nonsuch, without coming to that conclusion, and that in truth captain Patch himself was guilty of great negligence; for he, the witness, repeatedly warned him of his danger, and his an-swer was, he thought he could clear her. He was bound to be sure of it. It was better to lose a little v.-'Y than run the risk; and in passing the other vessel, he mi;>ht then have conversed with the captain. It is true, that at the last moment, he could not have avoided the other ves- - sel, though he could have come to, even the moment he-fore they struck; but he was blameable for not using more caution at an earlier period.
As to the other two grounds, the court cannot ascertain by what data the verdict was found, and therefore they cannot perceive that the jury have allowed freight for empty barrels, (if indeed they were empty,) or allowed too few bushels of rough rice to the barrel.
The motion in arrest cannot prevail, because it is too late after verdict to complain of a blank in the declaration as to the date or the number of bushels ; for that is cured by the verdict. If the defendant wished to take advantage of it, he should have done so by his pleadings. It was proved on the trial on what day the loss occurred, and what were the number of bushels lost.
The motion is refused.
Justices Bay, Nott, Huger and Gantt, concurred.